BRADLEY, Judge.
Glenda Clark obtained physical custody of Christy Lynn Tillman Weaver in July 1980. At this time Christy was in legal custody of the Mobile County Department of Pensions and Security (DPS). DPS placed Christy with Glenda and her husband, Cíate Clark, Sr., pending a final ruling on returning custody to the child’s natural mother. On January 12, 1981, following a Florida welfare department home study of the Clarks, the natural mother’s parental rights were terminated and the Clarks were awarded permanent custody.
The Clarks were divorced in December 1981. Custody of the three Clark children was awarded to Mr. Clark with the provision that Glenda could petition the court for custody of their youngest son, Aaron, at any time within one year. The Florida court refused to make a ruling respecting custody of Christy, who remained with Glenda.
Beginning in 1982, Glenda, who had been experiencing difficulty arranging day care for Christy around her work and class schedules, began to leave Christy with relatives. Zeb and Frankie Brister, who are relatives, frequently cared for Christy. Mr. and Mrs. Brister kept Christy most of the time between February and May of 1982.Christy returned to live with Glenda from June to October of 1982. Mr. and Mrs. Brister then kept Christy October, part of November, and December of 1982. Christy then returned to live with Glenda in late December of 1982 and stayed until February of 1983. At this time Christy went to stay with Glenda’s cousin, Mrs. Fauver, in Brookhaven, Mississippi until August 28, 1983. The Bristers were to keep Christy from August 28 to September 9, 1983 and then return her to Glenda in Mobile.
On September 15, 1983 the Bristers filed a petition in the Juvenile Court of Mobile County seeking custody of Christy. A hearing was held on October 7, 1983 and, on October 21, 1983, the court granted custody of the minor child to the Bristers and awarded Glenda rights of visitation for one week during the summer and one week at Christmas each year. Glenda filed motions for rehearing and for a mental examination of Mrs. Brister on October 31,1983. These motions were both denied by the court on November 2, 1983 without a hearing. On November 7, 1983 Glenda appealed to this court.
Glenda’s first contention is that the trial court committed reversible error in denying her motion for rehearing and motion for a mental examination without a hearing. She relies on the case of Steel v. Steel, 402 So.2d 1036 (Ala.Civ.App. 1981). Steel was a divorce case which involved several posttrial motions, one of which was a motion for a new trial under rule 59, Alabama Rules of Civil Procedure. The court denied the motion without a hearing.
On appeal, this court held that rule 59(g) requires that a posttrial motion not be ruled on until the parties have had an opportunity to be heard thereon. This court also held that rule 6(d), A.R.Civ.P., requires that notice of the hearing must be served no later than five days before the time set *352 for a hearing. Because neither notice nor a hearing was afforded, the case was reversed and remanded.
In Steel the trial court set the motion for new trial down for a hearing but denied the motion without holding a hearing. In the case at bar no request for a hearing on the motion was made, and the trial court denied the motion for rehearing without a hearing.
In Frederick v. Strickland, 386 So.2d 1150 (Ala.Civ.App.1980), a case similar to Steel, this court held that the trial court had not committed reversible error when it overruled a motion for new trial without holding a hearing. It should be noted that no request for a hearing on the new trial motion was made by either party.
This court said:
“Obviously, they had ample opportunity to request a hearing on their motion. And we consider a reasonable interpretation of the pertinent portion of Rule 59(g) to be that a party have an opportunity to be heard. This means that if the court itself fails to set the motion for hearing and a party wishes to be heard, then that party should request a hearing.”
We consider Frederick to be dis-positive of this issue. Implicit in our interpretation of rule 59(g), A.R.Civ.P., that a party have an opportunity to be heard on its posttrial motion is the requirement that the party request of the court a hearing on its posttrial motion should the court not set the motion for hearing. In the absence of a request for a hearing on the motion for rehearing, the trial court was not in error in ruling on the motion without a hearing.
The trial court’s denial of Glenda’s motion that Mrs. Brister be given a mental examination is also without error.
Glenda’s motion that Mrs. Brister be given a mental examination was made after the trial court had rendered its judgment and at the same time that the rehearing motion was filed.
Whether to grant or deny a motion for a physical or mental examination is a matter within the sound discretion of the trial court, and its decision will not be reversed except for abuse of that discretion. Teche Lines v. Boyette, 111 F.2d 579 (5th Cir.1940).
It has been held that the denial of a motion for a physical or mental examination filed at the same time that the motion for new trial was filed was not an abuse of the trial court’s discretion. Teche Lines, Inc. v. Boyette, supra. In the case before us, the motion for mental examination was made after the trial had ended and judgment had been rendered. In fact, the motion for mental examination was made at the same time that the motion for rehearing was made. The trial court, therefore, did not abuse its discretion by denying the motion.
Glenda’s final contention is that the trial court abused its discretion in depriving her of custody of the child and the award of visitation rights. We disagree.
There is a presumption of correctness which accompanies the judgment of the trial court in every case heard ore tenus. Alford v. Alford, 368 So.2d 295 (Ala.Civ.App.1979). There is also a rule of repose applicable to child custody modification cases. Perez v. Hester, 272 Ala. 564, 133 So.2d 199 (1961). To overcome these two rules, there must be evidence of a material change of circumstances occurring since the last custody judgment so affecting the best interests of the child as to necessitate a change of custody. Alford v. Alford, supra. The judgment entered by the court must be so unsupported by the evidence as to be clearly an abuse of the court’s discretion. Quinn v. Quinn, 351 So.2d 925 (Ala.Civ.App.1977).
The evidence shows that when the child was taken from its natural mother and placed with the Clarks the Clarks were married and had a stable home life. Since that time the Clarks have divorced and the child’s life has become very unstable.
The evidence shows that the child has been in Glenda’s care only about one-third of the time that she has had custody. The *353 child has been kept by relatives, including the Bristers, for months at the time.
Since the Bristers have been keeping Christy, she has become well adjusted and appears quite happy. She attends school regularly and participates in church activities where Dr. Brister is the pastor.
We find that the evidence supports the trial court’s change of custody and that its decision is not palpably wrong.
Glenda also says that the trial court’s award of visitation rights to her is in error.
Much discretion is reposed in the trial court in settlement of visitation rights with a child. Hayes v. Hayes, 337 So.2d 770 (Ala.Civ.App.1976). In the exercise of that discretion the trial court is primarily concerned with the best interests of the child. Brothers v. Vickers, 406 So.2d 955 (Ala.Civ.App.1981). The evidence shows that Glenda was not the child’s natural parent, but was awarded custody in January 1981, along with her then-husband, after the natural mother’s parental rights had been terminated. After Glenda and her husband divorced, the child was in the custody of Glenda. However, for the twenty-four months between the divorce and the hearing, the child resided with Glenda for only nine of those months. During the other months the child was living with various relatives, including the Bristers. Glenda also had a live-in boyfriend whom she testified she planned to marry.
The trial court found that the child had become very confused because of the frequent changes in custodians and needed a stable home environment. It found that the Bristers could provide such a stable home life.
Although Glenda was given only two weeks visitation a year, we cannot say that such visitation is so inadequate as to require reversal. Glenda was the child’s custodian for a relatively short period of timé, and, even during that time, she had the child in her physical custody for an even shorter length of time. Accordingly, the trial court could have concluded that Glenda was not all that interested in seeing the child or in being responsible for her care and nurture. We find no error here.
We would observe that child visitation can be changed by the trial court upon proper petition and sufficient proof.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.